IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLEGIS GROUP, INC., et al.,       :

    Plaintiffs/Counterclaim       :
    Defendants,
                                         :
v.
                                         :
JUSTIN JORDAN, et al.,
                                         :   Civil Action No. GLR-12-2535
    Defendants,
                                         :
v.
                                         :
DANIEL CURRAN, et al.,
                                         :
    Counterclaim Plaintiffs.
                                         :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiffs/Counterclaim Defendants Allegis Group, Inc. ("Allegis") and Aerotek, Inc.'s ("Aerotek") Motion to Partially Dismiss Counterclaim Plaintiffs Daniel Curran, Michael Nicholas, and Chris Hadley's ("Plaintiffs") Amended Counterclaim. (ECF No. 35). This case involves Allegis's decision to discontinue payments to Plaintiffs under the Incentive Investment Plan ("IIP"). Plaintiffs' Amended Counterclaim alleges breach of contract (Count I), violation of the Maryland Wage Payment and Collection Law (the "Maryland Wage Act"), Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. (West 2013) (Count II), promissory estoppel (Count

III), and unjust enrichment/quantum meruit (Count IV).  (ECF No. 32).  Specifically, Allegis and Aerotek move to dismiss Counts II, III, and IV.

The issues have been fully briefed and the Motion is ripe for disposition.  No hearing is necessary.  See Local Rule 105.6 (D.Md. 2011).  As will be outlined in specific detail below, the Court grants Allegis and Aerotek's Motion to Partially Dismiss because (1) the payments do not constitute "wages" under the Maryland Wage Act; (2) Plaintiffs failed to establish a prima facie case for promissory estoppel; and (3) Plaintiffs have not met the prerequisite for bringing a quasi-contractual claim when an express contract exists.

### I.   BACKGROUND[1]

Plaintiffs are former employees of Aerotek, a Maryland employee staffing agency and wholly-owned subsidiary of Allegis. In January 1993, Allegis implemented the Allegis Group IIP, an investment plan that allows management and high-level employees to acquire a financial interest in the company by promising the employees the equivalent of company stock.  The purpose of the IIP is to provide a "select group of management or highly compensated employees . . . an incentive to promote the best interests of the Companies, and . . . an incentive to promote

---

[1] Unless otherwise noted, the following facts are taken from the Amended Counterclaim and are viewed in a light most favorable to Plaintiffs.

2

the long term economic growth of the Companies." (Countercl. Ex. A, at 1, ECF No. 25-1). Specifically, under the IIP, eligible employees are awarded "incentive investment units" ("Units"), which are equivalent to a common share of Allegis stock but do not actually grant equity in Allegis.

While employed at Aerotek, employees receive cash dividends twice a year based on the value of their Units. In addition, once their employment has ended, Aerotek pays eligible employees the principle balance of the value of their Units, known as "IIP payments," which are distinct from the dividend payments employees receive while employed. Following the termination of their employment, Aerotek makes IIP payments to former employees as follows: five-percent of their balance is paid every quarter for ten quarters, and then the remaining fifty-percent of their balance is paid after thirty months.

Allegis awards Units through IIP Award Agreements, which employees must sign each time they earn Units. The IIP Award Agreements detail when the Units will vest, and state that employees receive payments for vested Units once their employment has ended. They also indicate that Unit payments are treated as income for the purposes of federal and state income tax withholding, and withholding under the Federal Insurance Contributions Act. The IIP Award Agreements further acknowledge that, although Aerotek "anticipates that the federal income tax

consequences . . . are as described, the Internal Revenue Service is not bound by such description and the Company does not guaranty the federal income tax treatment of the award." (Countercl. Ex. B, at 3, ECF No. 25-2).

Lastly, the IIP Award Agreements condition payment upon compliance with Section 9 of the IIP, stating that "the terms and conditions set forth in Section 9 of the [IIP] are material and essential terms of your award of Units and your eligibility to receive payment for any vested Units." (Id. at 2). Section 9 of the IIP restricts employees from competing with Allegis and its subsidiaries, or soliciting Allegis's clients for a 30-month period and within a 250-mile radius of the office where the employees last worked. Compliance with these post-employment restrictions is the only limitation placed upon the payment of vested Units. Otherwise, IIP payments begin immediately after one's employment has ended.

As director-level employees, Plaintiffs participated in the IIP and were awarded Units based on their employment with Aerotek. During their employment, Plaintiffs signed multiple IIP Award Agreements and received biannual dividend payments for their Units. At some point during their employment, Plaintiffs allegedly were told the IIP payments represented compensation earned as part of their compensation packages. When Plaintiffs were promoted to their director-level positions, they faced

4

potential pay cuts that Allegis and Aerotek allegedly stated would be offset by the IIP payments. Moreover, Allegis and Aerotek allegedly used increases in Units as a reason not to provide higher bonuses and pay increases for certain positions.

Between September 2011 and April 2012, each of the Plaintiffs resigned from Aerotek. Under the IIP, Mr. Curran was scheduled to receive $196,470 in IIP payments at the time he resigned. Similarly, Mr. Nicholas was scheduled to receive $138,268, and Mr. Hadley was scheduled to receive $498,414.

During their exit interviews, Kim Despaux, a human resources employee for Allegis, informed Plaintiffs they would receive a package of documents necessary to receive the post-employment IIP payments. Mr. Curran received his packet, completed the documents, and received two IIP payments of $8,851 each. When he did not receive his third IIP payment, Mr. Curran contacted Ms. Despaux. Ms. Despaux informed Mr. Curran that Jeff Reichert, from Allegis's legal department, halted the payments and did not provide a reason for doing so.

Mr. Nicholas also received the packet and completed the necessary documents. He received one IIP payment of $6,195. When he did not receive his second IIP payment, Mr. Nicholas contacted Ms. Despaux and was also told that Mr. Reichert stopped the payments without explanation. Mr. Hadley never received the packet of necessary documents. Like Mr. Curran and

Mr. Nicholas, Ms. Despaux told Mr. Hadley that Mr. Reichert, without explanation, put his payments on hold.  Although Ms. Despaux told Plaintiffs to contact Mr. Reichert directly, Mr. Reichert did not respond to any of Plaintiffs' inquiries.

On August 23, 2012, Allegis, Aerotek, and Teksystems, Inc.[2] brought suit in this Court against Plaintiffs, and Justin Jordan, Ana Neto Rodrigues, and Alexander Ferrello,[3] alleging, among other things, breach of their employment agreements and breach of the IIP Award Agreements.  On January 22, 2013, Plaintiffs filed an Amended Counterclaim, alleging breach of contract, violation of the Maryland Wage Act, promissory estoppel, and unjust enrichment/quantum meruit.  Allegis and Aerotek now move to dismiss Plaintiffs' Counterclaim as to the Maryland Wage Act (Count II), promissory estoppel (Count III), and unjust enrichment/quantum meruit (Count IV) claims.

## II.  DISCUSSION

### A.  Standard of Review

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege facts that, when accepted as

---

[2] Teksystems, Inc., also a wholly-owned subsidiary of Aerotek, is not a party to Plaintiffs' Amended Counterclaim and does not participate in Allegis and Aerotek's Motion to Partially Dismiss.

[3] Mr. Jordan, Ms. Rodrigues, and Mr. Ferrello are former employees of Aerotek.  They did not join Plaintiffs in filing a counterclaim against Allegis and Aerotek, and do not participate in this matter.

true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth.  Id. (citing Twombly, 550 U.S. at 555).  Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level."  Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

In determining whether to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005); Albright v. Oliver, 510 U.S. 266, 268 (1994).

Lastly, as the basis of this Court's jurisdiction is in diversity of citizenship, the Court must follow the principles set forth in Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

7

The Court is obligated to apply Maryland law to questions of substantive law. Ellis v. Grant Thorntnon LLP, 530 F.3d 280, 287 (4th Cir. 2008); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999).

**B.   Analysis**

   **1.   Maryland Wage Act**

In Count II, Plaintiffs allege that Allegis and Aerotek violated the Maryland Wage Act when they failed to make IIP payments to Plaintiffs following the termination of their employment.  The Maryland Wage Act requires employers to pay an employee "all wages due for work that the employee performed before the termination of employment."  Md. Code Ann., Lab. & Empl. § 3-505(a).

As a preliminary matter, the Court must determine whether the IIP payments constitute "wages" under the Act.  The Act defines "wage" as "all compensation that is due to an employee for employment."  Id. § 3-501(c)(1).  Among other things, wages include bonuses, commissions, severance pay, and "any other remuneration promised for service."  Id. § 3-501(c)(2); see Stevenson v. Branch Banking & Trust Corp., 861 A.2d 735, 749 (Md.Ct.Spec.App. 2004) (finding that the Act covers "a severance benefit that is based on the length and/or nature of the employee's service, and promised upon termination").

Allegis and Aerotek argue the IIP payments are conditioned on compliance with Section 9, the non-compete provision of the IIP, and thus do not constitute wages. Plaintiffs argue the IIP payments qualify as wages under the Act because the Units were awarded during the course of their employment and were based on their work performance. As Plaintiffs note, Maryland courts recognize that the Act extends to pay "that represents deferred compensation for work performed during the employment." Stevenson, 861 A.2d at 749.

Those payments, however, are recoverable under the Act only if the payment is based solely on the work the employee performed before his employment ended. See id. at 750–51 (finding that termination compensation did not constitute wages under the Act when the payment agreement contained a non-compete clause); see also Makowski v. Bovis Lend Lease, Inc., No. RDB 10-1844, 2011 WL 1045635, at *10 (D.Md. Mar. 17, 2011) (same). Indeed, the bright line rule of the Court of Appeals of Maryland makes clear that "when a payment is exchanged as remuneration for an employee's work *but also* subject to any additional unfulfilled promises or conditions, the payment falls outside the definition of 'wages.'" Makowski, 2011 WL 1045635, at *8 (citing Catalyst Health Solutions, Inc. v. Magill, 995 A.2d 960, 969 (Md. 2010)) (emphasis in original); see Medex v. McCabe, 811 A.2d 297, 302 (Md. 2002) ("When the payments are dependent upon

conditions other than the employee's efforts, they lie outside of the definition [of wages]."). The IIP payments thus do not constitute wages.

To be eligible for the IIP payments, the IIP Award Agreements required Plaintiffs to refrain from competing against Allegis and Aerotek within 250 miles for 30 months following the termination of their employment. (Am. Countercl. ¶ 19, ECF No. 32). Moreover, the IIP Agreements explicitly state that employees "shall be entitled to receive payment for the Units only to the extent that . . . [they] have complied with and fulfilled all of the terms of the [IIP]." (Countercl. Ex. B, at 1). Although Plaintiffs earned the Units during the course of their employment, the IIP Award Agreements state that payment is contingent upon compliance with the IIP, and specifically, Section 9. (Id. at 2).

Section 9 confirms that IIP payments are offered in exchange for unfulfilled conditions following employment, stating that employees must comply with its non-compete provision "[t]o earn and become entitled to receive payment for Units," that Allegis and Aerotek are only obligated to make IIP payments once the employee complies with Section 9, and that "[t]he terms and conditions set forth in this Section 9 are material and essential terms of any award of Units." (Countercl. Ex. A, at 4, 6). As a result, the IIP Award

Agreements are not solely based on the work Plaintiffs performed before the termination of their employment and do not constitute wages under the Wage Act.  Plaintiffs thus do not state a plausible claim for relief under the Act.

Plaintiffs proffer two additional arguments that can be easily disposed.  First, Plaintiffs argue the IIP payments are wages because the IIP Award Agreements characterize IIP payments as income and compensation for tax purposes.  This argument, however, is misplaced.  The IIP Award Agreements note that their characterization is only advisory and that "the Internal Revenue Service is not bound by such description and the Company does not guaranty the federal income tax treatment of the award." (Countercl. Ex. B, at 3).  Nonetheless, the IIP Award Agreements' advisory characterization of IIP payments as income is irrelevant to the Court's determination under the Wage Act.

Second, Plaintiffs contend that the IIP payments are not contingent upon post-employment conditions because Aerotek began making payments to Plaintiffs during the course of their employment.  Plaintiffs, however, either confuse or blur the distinction between the two payments offered and the payments at issue here.  Indeed, Aerotek made dividend payments to Plaintiffs while they were employed with the company.  The IIP payments, however, are distinct post-employment payments that are contingent upon compliance with Section 9.  The dividend

payments are separate and have no bearing on the determination that the IIP payments are not wages under the Maryland Wage Act.

Accordingly, Plaintiffs have failed to state a claim upon which relief may be granted, and Count II of their Amended Counterclaim is dismissed.

**2.   Promissory Estoppel**

Plaintiffs allege that Allegis and Aerotek "promised [Plaintiffs] the vested IIP payments as part of the compensation for their services and compliance with the IIP," upon which they relied to their detriment. (Am. Countercl. ¶¶ 56, 59). Specifically, Plaintiffs argue Allegis and Aerotek represented the IIP payments as compensation that offset potential pay cuts when Plaintiffs were promoted to director-level positions.

To state a claim for promissory estoppel or detrimental reliance under Maryland law, Plaintiffs must show: (1) a clear and definite promise by Allegis and Aerotek; (2) a reasonable expectation by Allegis and Aerotek that the promise will induce action or forbearance by Plaintiffs; (3) the promise induces actual and reasonable action or forbearance by Plaintiffs; and (4) a resulting detriment to Plaintiffs that can only be avoided by enforcement of the promise. <u>Pavel Enters., Inc. v. A.S. Johnson Co.</u>, 674 A.2d 521, 532 (Md. 1996) (citing Restatement (Second) of Contracts § 90(1) (2012)).

Plaintiffs pled neither a clear and definite promise by Allegis and Aerotek, nor a reasonable expectation by Allegis and Aerotek that their promise will induce action or forbearance, other than those required to receive IIP payments after employment. As previously explained, the IIP Award Agreements clearly and definitively promise IIP payments if the employee complies with Section 9 of the IIP. The IIP Award Agreements provide that employees are entitled to receive IIP payments upon the termination of their employment, but "only to the extent that . . . [the employee] ha[s] complied with and fulfilled all of the terms of the [IIP]," and that the employee "acknowledge[s] and agree[s] that the terms and conditions set forth in Section 9 of the [IIP] are material and essential terms of [the] award of Units and [the employee's] eligibility to receive payment . . . ." (Countercl. Ex. B, at 1–2). Section 9 requires an employee to promise that he will not compete with Allegis or its subsidiaries for thirty months following the termination of his employment "to earn and become entitled to receive payment for the Units . . . ." (Countercl. Ex. A, at 4).

In fact, IIP payments are so intertwined with Section 9 that the IIP Award Agreements provide that employees "shall return to the Company any and all amounts that [they] have received or otherwise are entitled to receive with respect to

13

the [IIP payments]" should Section 9 be invalidated by a court of competent jurisdiction. (Countercl. Ex. B, at 2-3). Considering that Plaintiffs "received and signed multiple [IIP] Award Agreements . . . over a period of years," it would be unreasonable for Plaintiffs to conclude otherwise, or to act in accordance thereof, despite any subsequent oral assertion to the contrary. See Pratt v. BAC Home Lending Servicing, LP, No. 12-cv-00368-AW, 2012 WL 1565232, at *5 (D.Md. Apr. 30, 2012) (finding it unreasonable for a mortgagor to continue making reduced-rate payments in reliance of a contract despite clear contractual language to the contrary).

Plaintiffs, however, argue they can rely on Allegis and Aerotek's oral assertions because the IIP Award agreement is ambiguous as to several material terms. Specifically, they argue the agreements are ambiguous as to whether the IIP payments constitute wages, when the right to IIP payments commence, and whether the merger clause in the IIP Award Agreement incorporates the entirety of the IIP. The Court disagrees.

First, as previously explained, the IIP Award Agreements do not represent IIP payments as income except for tax purposes. Second, the agreements clearly state that IIP payments commence following the termination of employment and continue periodically so long as the employee complies with Section 9.

14

Lastly, the IIP Award Agreements incorporate every aspect of the IIP, providing: "This Agreement is intended to conform in all respects with, and is subject to all applicable provisions of, the [IIP], which is incorporated herein by reference. Inconsistencies between the Agreement and the [IIP] shall be resolved in accordance with the terms of the [IIP]." (Countercl. Ex. B, at 4). The IIP and IIP Award Agreements are thus unambiguous, and it is unreasonable for Plaintiffs to rely on subsequent oral statements.

Accordingly, Plaintiffs have not sufficiently pled a claim for promissory estoppel and the motion to dismiss as to Count III must be granted.

### 3. Unjust Enrichment/*Quantum Meruit*

Plaintiffs contend that they may bring a claim for unjust enrichment and *quantum meruit* if this Court finds the IIP Award Agreement unenforceable. Unjust enrichment and *quantum meruit* are quasi-contractual claims. *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000). Under Maryland law, quasi-contractual claims are not actionable when an express contract exists between the two parties that covers the subject matter of the claim. *Id.*; *see also Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 792 (D.Md. 2002) (citations and internal quotation marks omitted). Here, the IIP Award

15

Agreement is an express contract that covers the disbursement of and conditions placed upon the IIP payments. Plaintiffs have neither questioned its existence nor its legality.

Nonetheless, Plaintiffs also argue they may allege unjust enrichment/quantum meruit as an alternative and inconsistent legal theory to their breach of contract claim under Federal Rule of Civil Procedure 8(d). Plaintiffs, however, are barred from alleging unjust enrichment/quantum meruit as an alternative theory when there is an express contract and there is no evidence of bad faith or fraud. See Doll v. Ford Motor Co., 814 F.Supp.2d 526, 551 (D.Md. 2011) (sustaining alternative breach of contract and unjust enrichment claims under Rule 8(d) when the plaintiff adequately pled a claim for fraud). Because an expressed contract exists that covers the subject matter of this claim and Plaintiffs have not also alleged fraud, their claim for unjust enrichment/quantum meruit will be dismissed.[4]

---

[4] In their Amended Counterclaim, Plaintiffs allege that Allegis and Aerotek's acceptance of their service made it inequitable for Allegis and Aerotek to retain the benefit of their service without paying the IIP payments. Allegis and Aerotek argue the IIP payments were not for services rendered, but rather were an incentive to promote the best interest and the economic growth of the company. In light of the fact that Plaintiffs may not raise a claim for unjust enrichment or quantum meruit here, it is unnecessary for the Court to address these arguments.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendant's Motion to Partially Dismiss Plaintiffs' Amended Counterclaim (ECF No. 35) is GRANTED. Counts II, III, and IV of Plaintiffs' Amended Counterclaim are dismissed. A separate Order follows, and a preliminary Scheduling Order will be issued.

Entered this 17th day of April, 2013

/s/
_____
George L. Russell, III
United States District Judge