IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALLEGIS GROUP, INC., et al., | : |
|     Plaintiffs, | : |
| v. | :   Civil Action No. GLR-12-2535 |
| JUSTIN JORDAN, et al., | : |
|     Defendants. | : |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiffs', Allegis Group, Inc. ("Allegis"), Aerotek, Inc. ("Aerotek"), and Teksystems, Inc., Second Motion for Summary Judgment (ECF No. 102). Having considered the Motion and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons stated below, the Court will deny the Motion without prejudice.

**I.    BACKGROUND**

This matter involves six former Aerotek employees, including Defendants Justin Jordan, Daniel Curran, and Michael Nicholas,[1] and their activities before and after resigning.[2] Jordan served as a Regional Vice President and Curran and Nicholas served as National Account Managers and Directors of

---

[1] Though Ana Neto Rodrigues, Alexander Ferrollo, and Chris Hadley are named Defendants in this matter, for purposes of this memorandum, "Defendants" shall refer to Jordan, Curran, and Nicholas only.

[2] The background facts are set forth in this Court's June 10, 2014 Memorandum Opinion. (See ECF No. 85).

Strategic Sales.  Allegis selected Jordan, Curran, and Nicholas to participate in its Incentive Investment Plan ("IIP"), which awards participants "incentive investment units" ("Units"), equivalent to a common share of Allegis stock.  While employed at Aerotek, participants receive cash dividends twice a year based on the value of their Units.  Allegis awards Units through Award Agreements, which employees must sign each time they earn Units.  Each Defendant signed Award Agreements.

Once an IIP participant's employment has ended, Allegis pays the participant the principle balance of the value of his Units, known as "IIP payments," as follows: five-percent of their balance is paid every quarter for ten quarters, and then the remaining fifty-percent of their balance is paid after thirty months.  The Award Agreements state "the terms and conditions set forth in Section 9 [of the IIP] are material and essential terms of your award of Units and your eligibility to receive payment for any Units."  (ECF No.75-8).  Section 9 includes non-solicitation provisions and is effective for thirty months after termination of employment.  (Pls.' Opp'n to Defs.' Mot. for Partial Summ. J., Ex. 4 ["IIP"], at 5-6, ECF No. 75-6).  After termination and before receiving IIP payments, participants were required to sign Acknowledgment Letters stating, <u>inter alia</u>, a breach of Section 9 terminates their ability to receive IIP payments and requires them to refund any

2

IIP payments made.  (ECF Nos. 75-7, -25, -35).

Jordan resigned on February 21, 2009, and his IIP obligations expired on August 21, 2011; Curran resigned on September 16, 2011, and his IIP obligations expired on March 16, 2014; and Nicholas resigned on January 3, 2012, and his IIP obligations expired on July 3, 2014.  Jordan received all of his IIP payments, totaling over $1.45 million.  At the time of their resignations, Curran was scheduled to receive $196,470 in IIP payments and Nicholas was scheduled to receive $138,268.  Curran, however, only received two payments of $8,851, and Nicholas only received one payment of $6,195.  Allegis discontinued the IIP payments, contending that Curran and Nicholas breached their IIP Agreements.

Plaintiffs brought claims for breach of contract, rescission, and unjust enrichment against Defendants.  (ECF No. 26).  On December 23, 2013, Plaintiffs filed a Motion for Partial Summary Judgment on their breach of contract claim regarding the IIP Agreements.  (ECF No. 75).  On June 10, 2014, the Court granted Plaintiff's Motion, finding that Defendants breached their IIP Agreements.[3]  (ECF No. 85).  On June 29, 2015, Plaintiffs filed a Second Motion for Summary Judgment on the

---

[3] The Court found that Defendants breached their IIP Agreements at some time before their IIP obligations expired, but did not determine the specific date that the breaches occurred.

issue of damages related to Defendants' breach.[4] (ECF No. 102). Specifically, Plaintiffs seek the return of all IIP payments made to Defendants.  On July 16, 2015, Defendants filed a Response to the Motion. (ECF No. 103).  On July 27, 2015, Plaintiffs filed a Reply. (ECF No. 104).

## II.   DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

---

[4] Plaintiffs also seek entry of summary judgment and dismissal as to Counts II, III, and IV of Defendant's Amended Counterclaim (ECF No. 32). The Court dismissed the Counts on April 17, 2013. (ECF Nos. 44, 45). The Court will, therefore, deny the Motion as to the Amended Counterclaim.

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

## B. **Analysis**[5]

### 1. Restitution/Rescission

Plaintiffs argue they are entitled to restitution and rescission due to Defendants' material breach of their IIP Agreements. "Restitution . . . is referred to as an action for unjust enrichment." Alts. Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs, 843 A.2d 252, 275 (Md.Ct.Spec.App. 2004) (quoting Mogavero v. Silverstein, 790 A.2d 43 (Md.Ct.Spec.App. 2002)). In Maryland, it is well settled that a claim for unjust

---

[5] It is undisputed that the IIP contains a choice of law clause designating Maryland as the applicable law. (See Pls.' Opp'n Ex. 4 ["IIP"], at 10, ECF No.75-6). The Court will, therefore, apply Maryland law when evaluating the IIP, Award Agreements, and Acknowledgment Letters.

enrichment may not be brought when an express contract exists between the parties governing the subject matter of the claim. Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607 (Md. 2000) (quoting FLF, Inc. v. World Publ'ns, Inc., 999 F.Supp. 640, 642 (D.Md. 1998)). Courts have allowed unjust enrichment claims, however, when there has been a material breach or mutual rescission of the contract or when rescission is warranted. Id. at 608-09.

When "there has been a material breach of a contract by one party, the other party has a right to rescind it." Maslow v. Vanguri, 896 A.2d 408, 423 (Md.Ct.Spec.App. 2006) (quoting Wash. Homes, Inc. v. Interstate Land Dev. Co., 382 A.2d 555 (Md. 1978)). A material breach of a contract "destroys the main object of that agreement." Contract Materials Processing, Inc. v. KataLeuna GmbH Catalysts, 303 F.Supp.2d 612, 653 (D.Md. 2003) (citing Plitt v. McMillan, 223 A.2d 772, 774 (Md. 1966)). Nevertheless, "[c]ourt imposed rescission is an extreme remedy, appropriate only in situations where there is 'well established breach of a contract, and the injury caused thereby is irreparable, or if the damages that might be awarded would be impossible or difficult to determine or inadequate.'" Miller v. U.S. Foodservice, Inc., 361 F.Supp.2d 470, 485 (D.Md. 2005) (emphasis added) (quoting Vincent v. Palmer, 19 A.2d 183, 188 (Md. 1941)).

6

The IIP and Award Agreements state the terms and conditions set forth in Section 9 of the Plan are material and essential terms of your award of Units and your eligibility to receive payment for any Units. (ECF Nos. 75-6, 75-8). In the June 10, 2014 Memorandum Opinion, the Court found that Defendants breached their IIP Agreements by violating Section 9. (ECF No. 85). The Court stated Section 9 encompasses the main purpose of the IIP, which is to provide IIP participants with an incentive to promote the best interests and long-term economic growth of Allegis and its subsidiaries, and a violation of Section 9 undermines that purpose. (Id.). As such, the Court further finds Defendants materially breached their IIP Agreements. Plaintiffs, however, have not shown that their injury is irreparable or an award of damages would be impossible to determine or inadequate.

Additionally, a contracting party displeased with the other's performance may either: (1) "reaffirm the existence of the contract and . . . claim damages for its breach," or (2) repudiate the contract altogether and request rescission. Lazorcak v. Feuerstein, 327 A.2d 477, 480 (Md. 1974) (citing Kemp v. Weber, 24 A.2d 779 (Md. 1942)). "Obviously he cannot do both." Id. at 481. Here, Plaintiffs seek to do just that. They argue that they are entitled to rescission and full restitution of the IIP payments to prevent Defendants' unjust

enrichment, while simultaneously seeking to enforce the terms of the Acknowledgement Letters requiring participants to return all IIP payments upon breach of Section 9. Because Plaintiffs have failed to demonstrate the appropriateness of a court-imposed rescission and restitution, the Court will deny the Motion as to these requests.[6]

**2. Damages Provision**

Plaintiffs seek a refund of all IIP payments made to Defendants based on the Acknowledgment Letters which state a breach of Section 9 requires Defendants to refund any IIP payments made. Defendants argue this damages term is unenforceable.

**a. Modification or Single Contract?**

First, Defendants argue the damages term is unenforceable because it is only included in the Acknowledgment Letters, thereby constituting an impermissible modification of the IIP and Award Agreements unsupported by consideration. Plaintiffs argue the Acknowledgment Letters constitute Defendants' acceptance of the offer to receive payments for the Units awarded by the Award Agreements under the IIP.[7]

---

[6] The parties state that judgment as to damages would be inappropriate if the Court holds that restitution is not required by the Plan and operation of law.

[7] Plaintiffs also state the Acknowledgment Letters merely restate the legal consequences of breaching the IIP—a refund of all IIP payments. The Court notes the damages term is not

"The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis." Ford v. Antwerpen Motorcars Ltd., 117 A.3d 21, 25 (Md. 2015) (quoting Curtis G. Testerman Co. v. Buck, 667 A.2d 649, 654 (Md. 1995)). In Maryland, contract formation and interpretation is to be determined objectively, giving plain meaning to the unambiguous language of the agreement. DIRECTV, Inc. v. Mattingly, 829 A.2d 626, 632 (Md. 2003). Such interpretation looks to "what a reasonably prudent person in the same position would have understood as to the meaning of the agreement." Cochran v. Norkunas, 919 A.2d 700, 710 (Md. 2007) (citing Walton v. Mariner Health, 894 A.2d 584, 594 (Md. 2006)).

A court's inquiry "is focused on the four corners of the agreement," and the court should give effect to every clause so as not to disregard a meaningful part of the express language of the written contract. Clancy v. King, 954 A.2d 1092, 1101 (Md. 2008) (quoting Cochran, 919 A.2d at 710). Even so, "[t]he circumstances of the instruments' drafting and the content of the written instruments provide guidance to interpret the scope of the parties' agreement." Jaguar Land Rover N.Am., LLC v. Manhattan Imported Cars, Inc., 738 F.Supp.2d 640, 648 (D.Md. 2010), aff'd, 477 F.App'x 84 (4th Cir. 2012).

---

stated in the IIP or Award Agreements.

Contracts need not be formed in a single document; they may span over multiple documents which "evidenc[e] the intention of the parties in regard to the single transaction. This is true even though the instruments were executed at different times and do not in terms refer to each other." Rocks v. Brosius, 217 A.2d 531, 545 (Md. 1966). In those instances, "the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect." Rourke v. Amchem Prod., 863 A.2d 926, 941 (Md. 2004). Further, "a party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution. . . . [The Court is] loath to rescind a conspicuous agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement." Koons Ford of Balt., Inc. v. Lobach, 919 A.2d 722, 727 (Md. 2007) (citations omitted).

The Court will examine the express terms of the IIP, Award Agreements, and Acknowledgment Letters. The IIP encompasses the manner in which participants become eligible to earn the right to eventually receive payments for Units awarded by Allegis. Throughout the IIP, various provisions explicitly state the allocation of Units does not entitle a participant to payment. It states the Units allocated to participants' accounts "have no value other than as a potentiality of income that may be earned

10

in accordance with the terms and conditions of the [IIP]." (IIP at 4).

The IIP further states that "[t]he establishment and maintenance of any [a]ccounts do not create in any [p]articipant any rights in, or entitle any [p]articipant to any payments with respect to, any Units until payments with respect to such Units are earned in accordance with Section 9 of the [IIP]."[8] (Id.). Lastly, the IIP states that "[i]n order to earn and become entitled to receive payment for the Units allocated to a [p]articipant's [a]ccount . . . , the [p]articipant shall not, during the thirty (30) month period following the date of his" termination violate Section 9. (Id. at 5).

The Award Agreement informs a participant of the number of Units he has been awarded and reiterates that the participant's eligibility to earn and eventually receive payment for the Units is contingent on the participant's adherence to Section 9. (ECF No. 8).

The Acknowledgment Letter states the participant has the "opportunity to earn and receive payment for the [U]nits allocated to [his] account . . . subject to [the participant's] compliance with the terms and conditions of Section 9." (ECF Nos. 75-7, -25, -35). Additionally, the Acknowledgment Letter

---

[8] Contrary to Defendants' contentions, they did not earn and were not entitled to any payments for the value of the Units merely because the Units were placed in their accounts.

includes the IIP payment schedule for each participant, with the final payment to be dispersed on the date the participant's IIP obligations expire.  (Id.).  While the Acknowledgment Letter reiterates that a breach of Section 9 will terminate the participant's ability to earn the Units, it also requires the participant to refund any amounts previously paid with respect to the Units upon such breach. (Id.).

It is clear that the IIP, Award Agreements, and Acknowledgment Letters relate to a single matter—an employee's ability to receive payment for awarded Units upon termination of employment.  Each document has a distinct function—the IIP creates the system under which an employee may be selected to participate and become eligible for Units; the Award Agreements periodically inform participants of the number of Units assigned to their accounts; and the Acknowledgment Letters inform the participants of the monetary value of the Units awarded to their accounts, the amount of each payment, and when the payments are scheduled to be made.

The totality of the circumstances indicates that the documents were meant to be read and construed together. See Jaguar Land Rover N.Am., 738 F.Supp.2d at 648.  As such, the Court finds that the Acknowledgement Letter is not a

modification requiring additional consideration. It is, instead, a part of a single contract.[9]

Though this single contract spanned multiple documents executed at different times, when read together, the documents evidence the intentions of the parties—earning payment for the Units is contingent upon continued compliance with Section 9. Construing the documents harmoniously, giving effect to every provision expressly stated therein, a breach of Section 9 within the thirty-month period following termination requires a participant to refund of all IIP payments. Defendants are presumed to have read and understood the express terms each document comprising their contracts with Plaintiffs and are, therefore, bound by every term.

### b. Liquidated Damages Clause?

Next, Defendants argue that the damages provision is unenforceable liquidated damages clause. In Maryland, a liquidated damages clause is defined as "a specific sum of money . . . expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." Bd. of Educ. of Talbot

---

[9] Defendants also argue that the damages provision is an amendment or modification in contravention of Section 14 of the IIP, which states no action shall "materially and adversely affect any Units previously earned under the Plan." (IIP at 8). Because the Court finds that all documents constitute one contract, the Court will not evaluate this argument.

13

Cty. v. Heister, 896 A.2d 342, 351 (Md. 2006) (quoting Mass. Indem. & Life Ins. v. Dresser, 306 A.2d 213, 216 (Md. 1973)). There are three elements of a valid and enforceable liquidated damages clause:

> First, such a clause must provide 'in clear and unambiguous terms' for "a certain sum." Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach. Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact.

Heister, 896 A.2d at 352 (citations omitted).

A liquidated damages clause may be deemed an invalid penalty, however, where the stipulated amount is "grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract." Barrie Sch. v. Patch, 933 A.2d 382, 389-90 (Md. 2007) (quoting Balt. Bridge Co. v. United Rys. & Elec. Co., 93 A. 420, 422 (Md. 1915)). "Whether a contract provision is a penalty or a valid liquidated damages clause is a question of law . . . ." Id. at 388 (citing Heister, 896 A.2d at 351).

The Court may deem a liquidated damages clause valid, and not a penalty, upon satisfaction of two requirements: "[f]irst, the clause must provide a fair estimate of potential damages at the time the parties entered into the contract[; and s]econd,

14

the damages must have been incapable of estimation, or very difficult to estimate, at the time of contracting." Id. at 390 (citations omitted). The crux of the Court's analysis is the reasonableness of the damages provision rather than the uncertainty of estimating actual damages resulting from a breach. Willard Packaging Co. v. Javier, 899 A.2d 940, 954 (Md.Ct.Spec.App. 2006). The party seeking to set aside a bargained for contractual provision has the burden of proving the provision should not be enforced. Barrie Sch. v. Patch, 933 A.2d at 388.

Here, the damages provision states that a participant that breaches Section 9 of the IIP must "refund to [Allegis] any amounts previously paid." (ECF Nos. 75-7, -25, -35). The Court concludes that this provision establishes a certain sum because "amounts previously paid" may be calculated readily and with certainty as a definite amount. See Heister, 896 A.2d at 352. Also, the parties do not contend that the provision may be altered to correspond with actual damages after the fact. Instead, Defendants focus on the second element of a valid liquidated damages clause, arguing that the provision is unreasonable because the Acknowledgement Letters were presented

to the Defendants after their terminations and without any bargaining over the terms.[10]

> [B]argaining position of the parties contributes to the prima facie determination of the validity of a particular stipulated damages provision. . . . [A] non-breaching party cannot simply survive the legal test of reasonableness, regardless of the assignment of the burden of proof, where . . . the court is not dealing with a freely negotiated damages provision made between two parties of equal sophistication. Thus, the ultimate question of the assignment of the burden of proof, in cases where gross inequality of bargaining power exists, ought to be resolved in favor of the non-proponent of the provision, because the stipulated damage may prove unreasonable a. priori.

Willard Packaging, 899 A.2d at 952.

---

[10] Defendants present this argument under unconscionability. In Maryland, a contract term must be both procedurally and substantively unconscionable for the Court "to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." Doyle v. Fin. Am., LLC, 918 A.2d 1266, 1274 (Md.Ct.Spec.App. 2007) (citing Holloman v. Circuit City Stores, Inc., 894 A.2d 547, 560 (Md. 2006)). Procedural unconscionability is evidenced by "'one party's lack of meaningful choice' in making the contract," and substantive unconscionability relates to terms that "'unreasonably favor' the more powerful party." Rose v. New Day Fin., LLC, 816 F.Supp.2d 245, 256 (D.Md. 2011) (quoting Walther v. Sovereign Bank, 872 A.2d 735, 744 (Md. 2005)). While Defendants argue they lacked a meaningful choice in signing the Acknowledgment Letters, they state the damages provision is substantively unconscionable because the damages are "draconian." (ECF No. 103). In essence, Defendants argue the liquidated damages provision is substantively unconscionable simply because it seeks liquidated damages. Because liquidated damages provisions may be upheld so long as they meet the requirements elucidated above, the Court finds Defendants have failed to demonstrate the provision is substantively unconscionable.

Defendants, however, fail to point the Court to evidence in the record supporting their contention that they were unable to freely negotiate the damages provision or that a gross inequality of bargaining power existed. The Court, therefore, finds Defendants have failed to meet their burden of demonstrating the damages provision is unreasonable.

Similarly, Plaintiffs have not directed the Court to facts in the record demonstrating that the damages provision is reasonable. See Barrie Sch., 933 A.2d at 391 (finding liquidated damages provision reasonable by evaluating testimony regarding the difficulty in estimating damages at the time of contracting); CAS Severn, Inc. v. Awalt, 75 A.3d 382, 392 (Md.Ct.Spec.App. 2013) (same).

The Court will, therefore, deny Plaintiffs' Motion without prejudice and direct Plaintiffs to file a motion for summary judgment as to the reasonableness of the liquidated damages provision within thirty days of this Memorandum Opinion.

## C. CONCLUSION

For the reasons stated above, the Second Motion for Summary Judgment (ECF No. 102) is DENIED WITHOUT PREJUDICE. Plaintiffs shall file a motion for summary judgment as to the reasonableness of the liquidated damages provision within thirty days of this Memorandum Opinion. Defendants shall file a response within fourteen days of Plaintiffs' motion. Plaintiffs

shall file a reply within seven days of Defendants' response.  A separate Order follows.

Entered this 18th day of March, 2016

                                                   /s/
                              _____
                              George L. Russell, III
                              United States District Judge