UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of                                                          101 West Lombard Street
**GEORGE L. RUSSELL, III**                                    Baltimore, Maryland 21201
United States District Judge                                         410-962-4055

March 8, 2018

MEMORANDUM TO COUNSEL RE:          Allegis Group, Inc., et al. v. Justin Jordan, et al.
                                                               Civil Action No. GLR-12-2535

Dear Counsel:

Pending before the Court are Plaintiffs Allegis Group, Inc. ("Allegis"), Aerotek, Inc. ("Aerotek"),
and TEKsystems, Inc.'s Fourth Motion for Summary Judgment (ECF No. 124). The Motion is ripe for
disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined
below, the Court will grant the Motion.

This matter involves six former Aerotek employees, including Defendants Justin Jordan, Daniel
Curran, and Michael Nicholas,[1] and their activities before and after resigning.[2] Allegis selected Jordan,
Curran, and Nicholas to participate in its Incentive Investment Plan ("IIP"), which awards participants
Units,[3] equivalent to a common share of Allegis stock. (Am. Compl. ¶¶ 39, 40, ECF No. 26; see also Pls.'
Cross-Mot. Summ. J. ["Pls.' Cross-Mot."] Ex. 4 ["IIP"], ECF No. 75-6). While employed at Aerotek,
participants receive cash dividends twice a year based on the value of their Units. (IIP at 7).

Allegis awards Units through Award Agreements, which employees must sign each time they earn
Units. (Pls.' Cross-Mot. Ex. 6 ["Award Agreements"] ¶¶ 1, 4, ECF No. 75-8). Of import here, the
Award Agreements state that "the terms and conditions set forth in Section 9 [of the IIP] are material and
essential terms of your award of Units and your eligibility to receive payment for any Units." (Award
Agreements ¶ 2). Section 9 includes non-competition and non-solicitation provisions and is effective for
thirty months after termination of employment. (IIP at 5–6).

Once an IIP participant's employment has ended, Allegis pays the participant the remaining
balance of the value of his Units, known as "IIP payments," as follows: five percent of his balance is paid
every quarter for ten quarters, and then the remaining fifty percent of his balance is paid after thirty
months. (Am. Compl. ¶ 42). After termination and before receiving IIP payments, Allegis required

---

[1] Though Ana Neto Rodrigues, Alexander Ferrello, and Chris Hadley are named Defendants in
this matter, for purposes of this memorandum, "Defendants" shall refer to Jordan, Curran, and Nicholas
only.

[2] The background facts are set forth in this Court's June 10, 2014 Memorandum Opinion. (See
ECF No. 85). The Court repeats only facts relevant to the pending Motion. Unless otherwise noted, the
Court takes them from Plaintiffs' Amended Complaint (ECF No. 26). To the extent that the Court
discusses facts that Plaintiffs do not allege in their Amended Complaint, those facts are uncontroverted,
and the Court views them in the light most favorable to Defendants. The Court will address additional
facts when discussing applicable law.

[3] Capitalized terms maintain their definition from previous Memorandum Opinions and Orders.

participants to sign Acknowledgment Letters stating, inter alia, a breach of Section 9 terminates their ability to receive IIP payments and requires them to refund any IIP payments received. (See Pls.' Cross-Mot. Exs. 5, 23, 33, ECF Nos. 75-7, -25, -35). When Defendants resigned, each of them signed the Acknowledgement Letters. (Id.).

Jordan resigned on February 21, 2009, and his Section 9 obligations expired on August 21, 2011. (Pls.' Cross-Mot. Ex. 5). Curran resigned on September 16, 2011, and his Section 9 obligations expired on March 16, 2014. (Pls.' Cross-Mot. Ex. 23). Nicholas resigned on January 3, 2012, and his Section 9 obligations expired on July 3, 2014. (Pls.' Cross-Mot. Ex. 33). At the time of their resignations, Curran was scheduled to receive $196,470.00 in IIP payments and Nicholas was scheduled to receive $138,268.00. (June 10, 2014 Mem. Op. at 7, ECF No. 85).

Before Jordan's IIP obligations expired, he solicited Hadley to resign from Aerotek. (Am. Compl. ¶ 53). Similarly, before Curran and Nicholas' IIP obligations expired, they began working at PES, where they staffed IT positions in competition with Plaintiffs. (Id. ¶¶ 55, 59, 65). As a result, all three Defendants breached their Award Agreements. (June 10, 2014 Mem. Op. at 36–37). Allegis discontinued the IIP payments to Curran and Nicholas. (Defs.' Answer ¶¶ 46, 47, ECF No. 30). Curran only received two payments of $8,851.00, and Nicholas only received one payment of $6,195.00. (Am. Compl. ¶¶ 46, 47). Jordan, meanwhile, received all of his IIP payments, totaling over $1.45 million. (Am. Compl. ¶ 45).

Plaintiffs brought claims for breach of contract, recession, and unjust enrichment against Defendants. (Am. Compl. ¶¶ 83–129). On December 23, 2013, Plaintiffs filed a Cross-Motion for Partial Summary Judgment on their breach of contract claim regarding the Agreements. (ECF No. 75). On June 10, 2014, the Court issued a Memorandum Opinion (ECF No. 85) and Order (ECF No. 86) granting Plaintiffs' Motion, concluding that Defendants breached their Award Agreements. (June 10, 2014 Mem. Op. at 36–40).

On June 29, 2015, Plaintiffs filed a Second Motion for Summary Judgment on the issue of damages related to Defendants' breach. (ECF No. 102). On March 18, 2016, the Court issued a Memorandum Opinion (ECF No. 107) and Order (ECF No. 108) denying Plaintiffs' Motion without prejudice. The Court still concluded, however, that the IIP, Award Agreements, and Acknowledgement Letters were meant to be read and construed as a single contract (the "IIP Contract"). (Mar. 18, 2016 Mem. Op. at 12–13). The Court further concluded that Defendants' breach of the Award Agreements was material. (Id. at 7).

On March 6, 2017, the Court ordered the parties to address whether Plaintiffs have met the requirements for rescission and restitution. (Mar. 6, 2017 Order, ECF No. 118).[4] In response, Plaintiffs filed the instant Motion on April 10, 2017. (ECF No. 124). On May 8, 2017, Defendants filed an Opposition. (ECF No. 127). Plaintiffs filed a Reply on May 30, 2017. (ECF No. 130).

---

[4] The Court ordered the parties to address this issue after vacating the parts of its March 18, 2016 Memorandum Opinion and Order that denied Allegis rescission and restitution.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**Rescission and Restitution**

Plaintiffs argue that they are entitled to rescission and restitution because Defendants materially breached the IIP Contract. The Court agrees.

When one party materially breaches a contract, "the other party has a right to rescind it." Bezmenova v. Ocwen Fin. Corp., No. 8:13-cv-00003-AW, 2013 WL 3863948, at *3 (D.Md. July 23, 2013) (quoting Wash. Homes, Inc. v. Interstate Land Dev. Co., Inc., 382 A.2d 555, 563 (Md. 1978)) (internal quotation marks omitted). Rescission is an equitable remedy that aims to restore parties to their pre-contractual position. Baney Corp. v. Agilysys NV, LLC, 773 F.Supp.2d 593, 607 (D.Md. 2011) (quoting Contract Materials Processing, Inc. v. KataLeuna GmbH Catalysts, 303 F.Supp.2d 612, 654 (D.Md. 2003)). To return parties to their pre-contractual position, courts may grant restitutionary damages within its equitable powers. Contract Materials, 303 F.Supp.2d at 654.

3

Here, the Court has already concluded that Defendants breached the Award Agreements, (June 10, 2014 Mem. Op. at 36–40), and that the breach was material, (Mar. 18, 2016 Mem. Op. at 7). Thus, Plaintiffs have the right to rescind the IIP Contract. See Bezmenova, 2013 WL 3863948, at *3 (quoting Wash. Homes, Inc., 382 A.2d at 563). In addition, the Court may grant restitutionary damages to Plaintiffs as a result of Defendants' material breach. See Contract Materials, 303 F.Supp.2d at 654.

Defendants maintain that even if they materially breached the Award Agreements, Plaintiffs are not entitled to restitution and rescission because Plaintiffs cannot return the consideration Plaintiffs received under the IIP Contract. The Court disagrees.

To be sure, even when there is a material breach, "rescission is generally appropriate only when 'the party exercising a right to rescind notif[ies] the other party and demonstrate[s] an unconditional willingness to return to the other party both the consideration that was given and any benefits received.'" Baney, 773 F.Supp.2d at 607 (quoting Cutler v. Sugarman Org., Ltd., 596 A.2d 105, 111 (Md.Ct.Spec.App. 1991). The exercising party must then restore to the other party the consideration it received. Contract Materials, 303 F.Supp.2d at 654 (quoting Wash. Homes, 382 A.2d at 563). This restoration "is not an absolute prerequisite" for rescission, however. Id. If "restoration is impossible," the exercising party "can properly retain" the benefit nonetheless. Funger v. Mayor of Somerset, 223 A.2d 168, 174 (Md. 1966). When "it would be most equitable to allow rescission," even though restoration is impossible or undesirable, "the modern tendency is to allow the relief." Baney, 773 F.Supp.2d at 607–08 (quoting Funger, 223 A.2d at 173).

Here, by highlighting that Plaintiffs cannot return the consideration received under the IIP Contract, Defendants overlook that they actually provide a reason for why restoration is <u>not</u> required. Restoration is not required when "restoration is impossible." Funger, 223 A.2d at 174. Defendants define the consideration received as the period of Defendants' compliance with the non-competition and non-solicitation provisions from their resignations to their breach of those provisions.[5] As Defendants assert, "Plaintiffs will not be able to return" that consideration. (Defs.' Opp. Pls. Mot. Summ. J. ["Defs.' Opp."] at 8, ECF No. 127).[6] Thus, even though rescission usually requires Plaintiffs to restore the consideration they received, restoration is not required here.

Finally, Defendants contend that even if Plaintiffs are entitled to restitution, the restitution is not the entire amount of the IIP payments. Instead, restitution should be limited to the "manner and amount necessary to prevent unjust enrichment." (Defs.' Opp. at 9) (quoting Hill v. Cross Country Settlements, LLC, 936 A.2d 343, 352 (Md. 2007)). Defendants submit that the only restitution necessary to prevent

---

[5] In its June 2014 Memorandum Opinion, the Court concluded that Defendants breached their Award Agreements at some point before their Section 9 obligations expired, but did not determine the specific date that the breaches occurred. (June 10, 2014 Mem. Op. at 37–41).

[6] Indeed, this way of defining the consideration is most generous to the Defendants. The consideration Plaintiffs received under the IIP Contract may also be defined as, arguably, full compliance with the non-competition and non-solicitation provisions. Under this definition, Plaintiffs received no consideration because Defendants never fully complied with those provisions, making restoration impossible here as well. See Contract Materials, 303 F.Supp.2d at 654 (quoting Funger, 223 A.2d at 174) (holding that when the consideration received is "without value," restoration is not required).

4

unjust enrichment is restitution for the relatively short length of time that Defendants breached the non-competition and non-solicitation provisions. If so, Defendants argue, there is a genuine dispute of material fact over exactly when Defendants breached those provisions.

Defendants' argument is unavailing. As their quotation from Hill itself reveals, the court in Hill addressed restitution within the context of unjust enrichment. See Hill, 936 A.2d at 352. But here, there is an express contract between the parties—the IIP Contract. As a result, even if there is a dispute over when Defendants breached the non-competition and non-solicitation provisions, that dispute is not material. Plaintiffs are entitled to the entire amount of the IIP payments, irrespective of when Defendants' breach occurred.

In sum, the Court concludes that Plaintiffs are entitled to rescission and restitution. Accordingly, the Court will grant Plaintiffs' Motion, rescind the IIP Contract, and order repayment of the IIP payments.

**Jordan's Motion for Reconsideration**

In Defendants' Opposition, Jordan asks the Court to consider his prior Motion for Reconsideration (ECF No. 110), which the Court denied as moot without prejudice, (ECF No. 118). Plaintiffs point out, and Jordan does not deny, that he filed the Motion outside of the fourteen-day deadline Local Rule 105.10 imposes. Jordan maintains that under Local Rule 604, there is good cause for the Court to suspend the deadline. The Court disagrees. Jordan's Motion asks the Court to reconsider its previous conclusion that the damages provision of the Acknowledgement Letter was reasonable. He supports his Motion with evidence that, according to Jordan, shows that he was unable to freely negotiate the damages provision. The Court does not reach the issue, however, because in any event, Plaintiffs are entitled to rescission of the IIP Contract. Thus, Jordan has not shown good cause for the Court to suspend Local Rule 105.10's fourteen-day deadline and consider his Motion.

For the foregoing reasons, Plaintiffs' Fourth Motion for Summary Judgment (ECF No. 124) is GRANTED. The IIP Contract is RESCINDED. Judgment is ENTERED in favor of Plaintiffs in the following amounts, plus applicable pre-judgment interest:

Justin Jordan: $1,452,443.00
Daniel Curran: $17,702.00; and
Michael Nicholas: $6,195.00.

The remaining parties shall file a joint status report within seven days of the date of this memorandum. Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Very truly yours,

/s/
George L. Russell, III
United States District Judge